Good morning, Your Honors. May it please the Court, Craig Anderson on behalf of Las Vegas Metropolitan Police Department Officer Shahann Greene. This is a Section 1983 excessive force case where the District Court failed to properly apply the qualified immunity analysis to Officer Greene's use of force. The undisputed facts in this case establish that he should have been granted summary judgment under both prongs of the qualified immunity. Can I ask just a question off the bat? Isn't it disputed? Is it not disputed here as to whether the plaintiff was still resisting at the time that the chokehold was applied? It is true that the District Court found two disputed facts and said, therefore, it could not render a proper qualified immunity analysis. Right. And so do we have any jurisdiction to review that? Yes, you do. I believe this case falls much closer to Scott v. Harris than to George v. Morris. Under Scott v. Harris, the Court said that if there's video evidence that blatantly contradicts the record, the Court can disregard the factual findings of the District Court. And Scott v. Harris is very similar. As you are well aware, Scott v. Harris was a car chase. And according to the Supreme Court, the District Court categorized the facts as if the suspect was fleeing, was trying to pass a driving test based upon his representation of the facts. But the video showed quite a different scenario. So let's focus on that for a second because let me see if you agree with me. If we don't think the video clearly contradicts, I'm going to call him Mr. T, Mr. T's version of the facts in his declaration or his sworn affidavit, then we don't have jurisdiction, right? No. If you do not agree. Let me be honest with you. I've looked at this tape. His contention is after I was on the ground and not resisting anymore, Officer Green choked me. And you're saying we can tell from the tape that didn't occur? No. Okay. So we both agree I can't tell from the tape whether Officer Green choked him or not. Correct. But your question to me was whether then you would not have jurisdiction. And my answer to that is no. You would still have jurisdiction to decide the purely legal question. Of what? Whether the law is clearly established under this fact scenario. Because although you cannot tell whether he's resisting the moment he's on the ground, the question is broader than that. That is the plaintiff's testimony that he was not resisting. Sure. And we have to take that as true. Unless the video evidence clearly contradicts it. And you're telling me it doesn't clearly contradict it. Well, I was agreeing based upon your hypothetical, because I do believe it does. No, it's not hypothetical. I've looked at the video. Okay. I can't tell whether or not Mr. T is resisting at the time that he says a chokehold is being applied to him. Okay. And so let's assume that I reach that conclusion in my own mind. Does that mean we don't have jurisdiction to review the denial of qualified immunity here? No. Because the issue then is you take his testimony, you take that fact as true, but you view it through the eyes of an objectively reasonable officer on the scene. We're here. We're basically looking at the 14-second period after Sergeant Jenkins attempted to take the plaintiff into custody until he's rendered unconscious through the LVNR. You have to look at that fact that Mr. T says. I wasn't resisting through the eyes of a reasonable officer who had just witnessed 12 seconds of active violent resistance. Well, violent having watched the video is an adjective one uses when going to the jury, but I can't conclude as a matter of fact that the resistance I saw in that video was violent. Well, it's aggressive resistance. Okay. Fair enough. But that's not the word you used. Well, because you have a 6'1", 370-pound individual who is moving a pile of about five individuals whichever way he wants to go. Now, look, we're not arguing here about whether or not the officers had the right to take him to the ground. I think if that were the end, indeed, you've got summary judgment on everybody else. So if that were the issue, clearly established, you'd have no problem. What he says is after they took me to the ground and I stopped resisting, Officer Green choked me. And choked me until I passed out. He applied all three levels of the LVNR until he went unconscious. So let's assume that to be true. I can't tell that that's not true from the video. Are you saying that even if that's true, Officer Green is immune because why? Absolutely. And the reason is because would a reasonable officer having been involved in the totality of these circumstances recognize that after ten minutes of Mr. T's behavior, within two seconds he's like, okay, I'm done. So he would recognize that there was a need to choke him into unconsciousness at that point. A reasonable officer could conclude, because once they began performing the LVNR, he was still on his feet, there was still the resistance going on. So how would a reasonable officer know that all of a sudden he has subjectively decided to quit resisting? Based upon everything that had happened, I mean, this is a ten-minute encounter where the plaintiff had never shown any signs of compliance, surrender. You say it was a ten-minute encounter. Was there an encounter before the video? The encounter begins within the club. And, yes, that's on video where he's pushing an officer, Mr. T is pushing an officer. No, I see, but we have a video. And for a long time, Mr. T doesn't appear. And then he appears on the video, and it leads to the confrontation that we're talking about. So you're talking about the five-minute video in the hallway. There is video of his actions inside the club as well, where he is just as aggressive and just as violent. But they don't feel the need to apprehend him at that point. Well, they definitely tried to apprehend him at that point, but his group of friends surrounded him, pushed him out of the club, recognizing they were trying to arrest him. They were trying to force him out. Now, what the plaintiff is saying is, I was calm, I was walking towards the exit. So his story is blatantly contradicted, obviously, by the record. And I understand what you're saying, but you have to assume that after all that has gone on here, and this is a rather unique situation, I think you have a— if he wasn't in a group setting, I think your point would be better taken. But here these officers also have to be aware of what's going on behind them, that this could turn into a riotous situation, and now you're placing this obligation on them to somehow use this superhuman judgment that, okay, is he resisting, is he not, while they're trying to— And by the way, I think this is a great jury argument, and I can't imagine you're not going to win if it goes to trial. My question is a different one, which is that let's assume everything that this guy says is true. Are you saying that if somebody has resisted up to that point and has stopped resisting for a period of time, a police officer is nonetheless entitled to choke him? Well, based upon the facts of this case, okay, based upon his behavior for the prior five— Yeah, so let's assume he'd been—let's assume that he'd been really disruptive up until then. They wrestle him to the ground. He stops resisting. I can't tell from this video, it looks to me like it's more than two seconds that he's flat on the ground. He says, once I'm down there, I'm not resisting. Some evidence before that that he puts up his hands and says, okay. And so at that point, Officer Green chokes him. And you're telling me that's a reasonable police officer because he knew from the prior confrontation that he was difficult to apprehend. Well, but also, based upon his prior behavior, I'm talking specifically about the facts of this case, would a reasonable officer be required to credit a momentary stop in resistance and give him credit for that based upon his prior behavior and be, oh, he's done now. It's well known that suspects sometimes play possum. Sometimes they try to fake out officers. And so based upon his behavior all the way through this, a reasonable officer would not have to credit a momentary lapse in aggressive resistance. Could he have shot him? Absolutely not. Punched him in the face? Well, now, aggressive resistance, probably not in the face, but aggressive resistance would have allowed Officer Green, under these circumstances, to use a baton, taser, pepper spray. He chose to use the LVNR. And he was still aggressively resisting when the LVNR was begun. We see that on the tape. That's what I'm saying. Well, no, see, that's my point. I asked you that before. I don't see that on the tape. It may be corroborating evidence for Officer Green's testimony, but all I see on the tape is a pile of officers on top of a man whose legs are not moving. Yes, Your Honor. On top of a man who's been resisting for 10 minutes. And so you're going to say that's not true. No, Your Honor. And from the tape, I have to assume that he was not. From the tape and his testimony, you have to assume that he was not, unless you find the prior video. Because with Wilkinson v. Torres, which was not a video case, if the totality of the record contradicts the record. The prior record doesn't help me to know, doesn't help me to make any conclusions about whether he was still resisting after five officers took him to the ground. It helps me. If we were here on the other issues that the judge granted summary judgment on, I'd say, boy, looking at that. Why? They properly took him to the ground. But there's a period of time, it looks to me like half a minute or so, when he's on the ground where there doesn't appear to be any resistance. And he says sometime during that period of time, I was choked. Intermediate force was used against him. And so what you're trying to do is parse out each second of this. Is he resisting? Is he not? Is he resisting? Is he not? Would a reasonable officer confronted with these circumstances have to credit an aggressively resisting suspect's momentary cease of aggressive resistance and let go, and then if he starts up again, go back on? Wait a minute. He's got a bunch of officers on top of him. He's a very big man. To expect that in that circumstance, all of a sudden, he's going to sort of spring to his feet and resume his prior behavior, that seems to me exceedingly unlikely because he is on the ground. He's got a lot of officers on top of him. So you're saying that, well, he's going to come back and do the same thing. That just doesn't strike me as very probable. What's your answer to that? Yes, well, and that's because we're looking at this, of course, with the benefit of 20-20 hindsight. Well, but at the time, Officer Green knew that all the officers were on top of him. He was one of them. Well, and they're all viewing that this is aggressive resistance, and they're just trying to get him into custody because the minute that Officer Green has— I'm not talking about aggressive resistance. I'm talking about when he's on the ground with the officers on top of him, and at which point Officer Green begins administering the choke hold. And so Officer Green said that he performed the LVNR until he felt that he had quit resisting. Then he backed off and allowed the officers to handcuff him. And what we do know is that he was not handcuffed until after he was rendered unconscious, which lends some credence to the fact that he was still aggressively resisting. Well, no, that can't prove that he was aggressively resisting. It may be something that you can argue to the jury. Your argument is, well, we would have handcuffed him as soon as he stopped resisting, and therefore the fact that we didn't handcuff him until he became unconscious meant that he was resisting. The problem is I look at that tape, and it doesn't show resistance. It may well be because there's five people on top of him that he's punching the officers underneath. But he says, I stopped resisting when I was—I stopped resisting when I was taken to the ground. There's a long period of time, long, you know, not just momentary, and he says that during that period of time I was choked. And so assume that was all to be true, which I think we have to. Why isn't there then a question for the jury? I think there's not a question for the jury in this case, and that would move you to the clearly established prong that this is a unique set of facts. And because there is such a situation going on here, you have a group that needs to be controlled. You have a group that has to be handled. He is clearly a ringleader of this group. He is clearly trying to incite. But once they take this approach, would it be reasonable — is there any clearly established law that under these circumstances an officer is prohibited from using intermediate force because someone quits resisting for five seconds or whatever, a few seconds after five to ten minutes of aggressive resistance? It kind of puts the suspect in control of the situation, especially if someone is familiar with the law at that point, that if, hey, if I just fake like I'm done, then they have to stop and then I can do whatever. Because it's his — so I would say that there's no clearly established law that would put Officer Green on notice that under these specific circumstances. And the cases that I would cite would be Jackson v. City of Bremerton, and then most recently in Flockar v. Bergnow, this Court has stressed the importance of the safety concern when you're dealing with these group situations and that officers are granted perhaps a little bit more deference under these situations. I think I understand your questions. Why don't we hear from the other side, and then you've saved some time.  Thank you very much, Your Honor. Yes. May it please the Court, my name is Paola Armeni, and I represent Ian Tamalumalo. Your Honor, I — Thank you for pronouncing his name. You're welcome. It is our position that this Court respectfully lacks jurisdiction here because at the crux of this appeal is a factual dispute. Yeah, you know, I've still got such trouble. I cannot understand what Justice Breyer wrote when he wrote Johnson. I can understand what Justice Alito wrote when he wrote the later case Plumhoff. I am inclined to think that Plumhoff rules and that we have jurisdiction. I mean — All right. That's as cleanly as I can state it. No, I understand, Your Honor. And I would just submit that in George v. Morris, when they define what a purely legal question is, it involves contests not about what occurred or what action was taken, but the disputes about the preexisting law. But our discussion with your friend here is very helpful to me because he basically says, look, assume your client's version of the facts is true. And so if we do that, we have jurisdiction to determine whether or not, A, that either violates your client's rights, or B, whether the law is clearly established, don't we? We can't adjudicate the facts. Correct. But let's take your client's story as true. And, Your Honor, I think that — Absolutely true. And if it's absolutely true, then I think there is no issue of qualified immunity because then — But what clearly — what case, clearly established case, what case tells us under these circumstances, with our benefit of looking at the video, it's a melee. I don't know that's a legal term, but it's not just a one-on-one encounter. There's lots of stuff going on. There's resistance. They take them to the ground. It's relatively short. Let's assume the police officer didn't absolutely need to choke him, but it's in the middle of an emergency situation. What case tells us that, under those circumstances, the officer should have known he was stepping over the line? So I think Mullin v. Luna tells us we don't need a specific case on point. Right, right. And every time we cite that, the Supreme Court says to us, yes, you do. Because I think — You've overstepped Ninth Circuit. You're operating at general levels of — you're operating at levels of generality. So accepting that we don't need a case directly on point, because if we did, this would be easy, tell us what case is so close that it establishes the law. Well, and the reason is, Your Honor, is because we are trying — we need to give the officers notice. That's the whole idea behind this. Right, right. They need to know if they are violating clearly established law. Okay. So give us — what's your best case? So I think our best case is Bernard v. Theobald. Officer Theobald was also a Las Vegas Metropolitan Police Department officer. In that case, on interlocutory appeal, this Court sent the case back to be tried, which it was, in fact, tried, and a jury came back with a verdict for Mr. Bernard. And in that case, this Court said, at the time of the incident at issue here, a reasonable officer would have known it violated clearly established law to use a chokehold on a nonresisting arrestee. Who was handcuffed, yes? Mr. Bernard was. No, he was — no, he was not handcuffed, Your Honor, when he was — when the chokehold was applied. So I believe that's the best case. I think that Drummond and Blankenhorn also suggest probably, frankly, in a more general term, that compliance — when somebody is compliant, force should not be used. And in Drummond, they talk about choking and the person not being able to breathe. And I'm not sure this is a case in quite the sense that Judge Hurwitz is asking for it. We've got a long and very unhappy history of many people being killed in Los Angeles by the application of chokeholds. And this man was not killed, but it was pretty darn close. That is to say, he passed out, turned blue. He was eventually revived, but he could have been killed. Wouldn't have been hard to do it. This one was very close. Yes, sir. And I'd like to address what Mr. Anderson talked about, because he kept using the word that Mr. Tamalumala was being aggressively resisting. Aggressively resisting is a term of art in Las Vegas Metropolitan Police Department's policy. And aggressive resistance is defined as punching and kicking. There's no evidence in this record that that's what Mr. Tamalumala was doing. What he may have been doing, for argument's sake, is breaking the officer's grip when he was tussling around, wrestling. If he was doing that, by their definition, that's active resistance. And under active resistance, under their own policy, yes, they're allowed to do the LVNR, but they're only supposed to do Stage 1. Here, as the court has already recognized, they not only did Level 1, they went through Level 2, Level 3, rendering him unconscious. So is it your position that if they'd only done Stage 1, they wouldn't have violated his constitutional rights? No, I think there's an argument, obviously, Your Honor, is he wasn't resisting. So, no, if he was not resisting, they shouldn't have done anything. But just playing devil's advocate for a moment, even if we take the position that he was actively resisting, they're violating their own policy by taking him all the way to Level 3. What relevance does their policy have? It goes to reasonableness, Your Honor, whether an officer is acting reasonable. So if they had an unreasonable policy and the officer were following it, would he then be entitled to qualified immunity? I thought, see, I thought the qualified immunity analysis, and it's another one of those fictions the Supreme Court's come up with for us, is that police officers read all of our cases and understand them, which would make them better than most, than me, at least. But I'm not sure that you can establish reasonableness by saying that the Department has put together a policy. I'm not sure what the Department's policy. Certainly if you're acting against the Department's policy, it may be some evidence that you knew you were acting unreasonably. But following it, I'm not sure why it matters. I think it goes to reasonableness, Your Honor, and I think that's why the case that I cited to this Court about Bernard v. Theobald is so important, because we're using, in that case, the defendant also was an officer of the Las Vegas Metropolitan Police Department. And that case alone should have put that police department and those officers on notice that utilizing a chokehold on a nonresisting, compliant person at that point would be, in fact, excessive and violate their constitutional rights. What's your response to your opponent's argument that, you know, let's accept your client's version of the facts? Let's even accept that, yeah, let's accept that that was true. But a reasonable officer in this officer's shoes could have been mistaken, you know, reasonably mistaken in thinking that, you know, complete compliance had not been obtained at that point. I think that question is a jury issue that could be handled through interrogatories when the case is submitted to the jury as to whether that officer made a reasonable mistake to believe that Mr. Tamalamala was, in fact, resisting at the time. Well, I thought that was the part of the inquiry that qualified immunity calls on us to make, right? Because qualified immunity gives a little bit of a buffer zone for officers. They can be mistaken, but if, you know, and we're not supposed to judge it with the benefit of hindsight and where we can stop the video and, oh, it's happening there. It's all happening in real time, as Judge Hurwitz said. It was kind of a chaotic scene. So aren't we as the reviewing court supposed to make some assessment about whether, okay, maybe he was mistaken, but it was within the zone of reasonableness that qualified immunity affords? Yes, but can I explain that? Because there is a dispute as to the resisting or not, that's why I believe it is a factual dispute that would have to go to a jury to make that factual determination. Now, if the jury decides that after reviewing all the facts that it was reasonable, that mistake was reasonable, then I think at that point the district court can certainly step in and grant qualified immunity after a jury, if a jury has given a verdict for Mr. Tamalumala. And, Your Honor, I would like to pick up on something that you stated about this melee. Things had, in fact, calmed down. Mr. Tamalumala was out walking out of the casino. He did have officers around him. However, none of the officers were touching him. There was no screaming going on. He was simply walking out. Mr. Anderson keeps talking about these facts that occurred before the LVNR took place. However, in the deposition transcript of Officer Green, he concedes that he has no idea what goes on before as far as with Sergeant Jenkins. He says, I didn't even see that. All I see is some tussling going on with the other two officers, and that's when he gets involved. So what he actually saw right before is a little bit more limited than what I believe Officer Green is submitting today. Does this Court would like me to get into the state law concerns that were brought up about discretionary immunity? Should I address those? I don't need that. Then if this Court has no more questions, thank you. We'd ask you to affirm the district court's order. Okay. Thank you. Response. To address the cases cited by my opposing counsel, the Theobald versus Bernard was a person that tripped while being taken into custody. There was no group setting. The officer perceived he was resisting and put him in a choke hold, but he had not physically resisted prior to that point. So your point has to be it's not the same because prior to the takedown, Mr. T. had resisted? And also because this is a different situation where it's a group setting. The officers have different concerns. But what I take it from your argument is that there's no case on point because there's no case that involves the context before he was taken down. Isn't that really the centerpiece of your argument? Let's assume that there hadn't been a melee. Let's assume that they just, this guy, they tried to arrest the guy and he did exactly what this guy did. He put up his hands and he resisted and then five officers took him to the ground and one of them choked him. I have a big problem. You'd have a problem in that circumstance, wouldn't you? Yeah, because then you don't have the concerns about what's going on behind you, what's going on around you. That this has been going on for five to eight minutes. Usually when I'm here on a case, it's a ten-second encounter. You know, something happens very rapidly. These officers have been dealing with this for a substantial period of time. And I would direct you to Saussure versus Katz, which is a Supreme Court case, that says if an officer mistakenly believes a suspect may fight back, he can use more force than appears necessary. And that goes to what Judge Wofford was saying, that there can be reasonable mistakes of fact. I would say that if this person, say, was much smaller, as you said, it wasn't a melee going on around them. They just encounter a jaywalker on the street and he starts to move them and they LV&R him. I have a much harder case. You have to look at the totality, and that's what we learned from Sheehan, and I know you're familiar with Sheehan, that you have to look at the whole situation as a whole. Blankenhorn was a kid standing in a mall. He was never resisting. He never tried to fight with the officers. He was calm. And one thing the court credited in Blankenhorn was the pace of events was slow. This case did not have a slow pace of events. Drummond is interesting because that's the positional asphyxia case from 2003 where the court, Judge Reinhardt said it was okay to take him to the ground, even though he wasn't even suspected of a crime. He was mentally ill. The concern there was they kept their body weight on him for 20 minutes after he was handcuffed and restrained. So Drummond has absolutely no applicability to this case. So I would continue with my argument that there is no clearly established law under the facts of this case. And I'm not arguing like you guys always do. I don't want you to continue very long. You're already over time. I'll shut up. I apologize. Thank you for your time, Your Honor. Thank you. Thank both sides for their arguments. Mr. T, forgive me for pronouncing it that way, versus Green, submitted for decision. And that concludes our argument for this morning. I know we've got a lot of students here. After our conference, we'll come back out and talk to you. In the meantime, I think our law clerks are very happy to talk to you. Thank you.
judges: W. Fletcher, Watford, Hurwitz